IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff**<br><br>v.<br><br>Property No. 100 (before 3297), recorded at page 81 of volume 1 of Carolina, First Section, Registry of the Property of Carolina, Puerto Rico, located at 40 Calle Mar Mediteraneo, Lot Number 28 from Block "C" in Villamar, Development at Cangrejo Arriba Ward, Carolina, Puerto Rico,<br><br>**Defendant.** | CIVIL NO. 18- |

**VERIFIED COMPLAINT FOR FORFEITURE IN REM**

TO THE HONORABLE COURT:

COMES NOW, plaintiff, the United States of America, by and through its undersigned attorneys, Rosa Emilia Rodríguez-Vélez, United States Attorney for the District of Puerto Rico; Héctor E. Ramírez-Carbó, Assistant United States Attorney, Chief Civil Division, and Maritza González-Rivera, Assistant U.S. Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure.

NATURE OF THE ACTION

1.     This is a civil action in rem brought to enforce the provisions of Title 18, United States Code, Sections 1341, 1343, 1028(A), 1029, 1956 and 1957.

1

THE DEFENDANT <u>IN REM</u>

2.     The defendant real estate property seized by law enforcement officers of the Federal

Bureau of Investigation ("FBI") consist of:

> All that lot or parcel of land, together with its building, appurtenances,
> improvements, fixtures, attachments and easements, located at Cangrejo
> Arriba Ward, 40 Calle Mar Mediteraneo in the Municipality of Carolina,
> Puerto Rico, more particularly described as:

> "URBAN: Lot number Twenty Eight (28) from block "C" in Villamar
> Development at Cangrejo Arriba Ward of Carolina, Puerto Rico, of 377.14
> square meters. Its boundaries are by the NORTHWEST, in 25.00 meters with
> lot 26 from block C of the development; by the NORTHEAST, in 15.19
> meters, in part with lot 27 and in part with lot 29 from block C of the
> development; by the SOUTHWEST, in 15.00 meters with Street number One
> of the development; and by the SOUTHEAST, in 25.00 meters with lot 30
> from block C of the development. On said lot enclave a house".

> Property No.: 100 (before 3297) recorded at page 81 of volume 1 of
> Carolina, First Section, Registry of the Property of Carolina, Puerto Rico.

> Registered owners:   Héctor Pinilla Duarte and his wife Ana Lucia
> Quintero-Herrera.

JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over an action commenced by the United States

pursuant to Title 28 <u>United States Code</u>, Section 1345, over an action for forfeiture

pursuant to Title 28, <u>United States Code</u>, Section, 1355; and over this particular action

pursuant to of Title 18, <u>United States Code</u>, Sections 1341, 1343, 1028(A), 1029, 1956 and

1957.

4.     This Court has in rem jurisdiction over the defendant real estate property pursuant to Title

28, <u>United States Code</u>, Section 1355(b)(1)(A), (acts and omissions giving rise to the

2

forfeiture occurred in this district); and Section 1355(b)(1)(B), (the defendant is found in this district).

5.     Venue is proper in this district pursuant to Title 28, <u>United States Code</u>, Section 1355(b)(1)(A) (acts and omissions giving rise to the forfeiture occurred in this district) and Section 1395 (the defendant is found in this district).

BASIS FOR FORFEITURE

6.     This is a civil action <u>in rem</u> brought to enforce the provisions of Title 18 § U.S.C 1341 – Mail Fraud, Title 18 § U.S.C 1343 – Wire Fraud, Title 18 § U.S.C 1028(A) – Aggravated Identity Theft, Title 18 § U.S.C 1029 – Access Device Fraud, Title 18 § U.S.C. 1956 – Money Laundering and Title 18 § U.S.C. 1957 – Engaging in monetary transactions in property derived from specified unlawful activity.

FACTS

7.     The facts and circumstances supporting the seizure and forfeiture of the defendant real estate property are contained in the Title 28, <u>United States Code</u>, Section 1746 unsworn declaration of the Federal Bureau of Investigation ("FBI"), Special Agent Matthew Ferguson attached to this complaint.

CLAIM FOR RELIEF

WHEREFORE, the United States of America prays that a warrant of arrest for the defendant real estate property be issued; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant real estate property condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as

this Court may deem just and proper, together with the costs and disbursements of this action.

RESPECTFULLY SUBMITTED,

In San Juan, Puerto Rico, this ___9___ th day of ___July___, 2018.

ROSA EMILIA RODRIGUEZ-VELEZ
United States Attorney

s/Héctor E. Ramírez-Carbó
Héctor E. Ramírez-Carbó
Assistant U.S. Attorney
Chief, Civil Division
USDC-PR-NO. 214902
UNITED STATES ATTORNEY'S OFICE
Torre Chardón, Suite 1201
350 Carlos Chardón Street
San Juan, Puerto Rico 00918
Phone Number: (787)766-5656
Hector.E.Ramirez@usdoj.gov

s/M González
Maritza González-Rivera
Assistant United States Attorney
USDC-PR No. 208801
UNITED STATES ATTORNEY'S OFICE
Torre Chardón, Suite 1201
350 Carlos Chardón Street
San Juan, Puerto Rico 00918
Phone Number: (787) 766-5656
maritza.gonzalez@usdoj.gov

VERIFIED DECLARATION

I, Maritza González-Rivera, Assistant U.S. Attorney, for the District of Puerto Rico, declare under penalty of perjury as provided by Title 28, United States Code, Section 1746, the following:

That the foregoing Complaint is based on reports and information furnished to me by the Federal Bureau of Investigation ("FBI"); that everything contained therein is true and correct to the best of my knowledge and belief.

Executed in San Juan, Puerto Rico, this _9_ th day of _July_____, 2018.


s/ M González_____
Maritza González-Rivera
Assistant U.S. Attorney


VERIFIED DECLARATION

I, Matthew Ferguson, Special Agent, FBI declare as provided by Title 28, United States Code, Section 1746, the following:

I have read the contents of the foregoing Complaint for Forfeiture in Rem and the attached unsworn declaration thereto, and I find the same to be true and correct to the best of my knowledge and belief. I declare under penalty of perjury that the foregoing is true and correct.

Executed in San Juan, Puerto Rico, this _11 TH_ day of _July___, 2018.


Matthew Ferguson, Special Agent
Federal Bureau of Investigation ("FBI")


5

## UNSWORN DECLARATION UNDER PENALTY OF PERJURY

I, Matthew Ferguson, declare under the penalty of perjury the following is true and correct:

1.     I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) assigned to the San Juan Field Office.  I have been employed as a Special Agent since September 2009. Prior to my employment with the FBI, I worked as a Police Officer at the City of North Little Rock, Arkansas Police Department from 2004 to 2009.  I am currently assigned to the Criminal Enterprise squad and charged with investigating complex criminal enterprise organizations.

2.     The facts of this investigation have been summarized for the specific purpose of stating the reasonable grounds for my belief that the seized property constitutes illegal proceeds from Aggravated Identity Theft. No attempt has been made to set forth the complete factual history of the investigation or all of its details.

3.     The violations of Title 18 § U.S.C 1341 – Mail Fraud, Title 18 § U.S.C 1343 – Wire Fraud, Title 18 § U.S.C 1028(A) – Aggravated Identity Theft, Title 18 § U.S.C 1029 – Access Device Fraud, Title 18 § U.S.C. 1957 – Money Laundering constitute a specified unlawful activity, which makes the funds contained in the aforementioned financial institution forfeitable under 18 U.S.C. §981 (a)(1)(C) state that any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section 215, 471, 472, 473, 474, 476, 477, 478, 479, 480, 481, 485, 486, 487, 488, 501, 502, 510, 542, 545, 656, 657, 670, 842, 844, 1005, 1006, 1007, 1014, 1028, 1029, 1030, 1032, or 1344 of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

4.     I, the undersigned, make this unsworn declaration in support of a Verified Complaint for forfeiture in rem the following property:

**ITEM TO BE FORFEITED**

All that lot or parcel of land, together with its building, appurtenances, improvements, fixtures, attachments and easements, located at Cangrejo Arriba Ward, 40 Calle Mar Mediteraneo in the Municipality of Carolina, Puerto Rico, more particularly described as:

"URBAN: Lot number Twenty Eight (28) from block "C" in Villamar Development at Cangrejo Arriba Ward of Carolina, Puerto Rico, of 377.14 square meters. Its boundaries are by the NORTHWEST, in 25.00 meters with lot 26 from block C of the development; by the NORTHEAST, in 15.19 meters, in part with lot 27 and in part with lot 29 from block C of the development; by the SOUTHWEST, in 15.00 meters with Street number One of the development; and by the SOUTHEAST, in 25.00 meters with lot 30 from block C of the development. On said lot enclave a house".

Property No.: 100 (before 3297) recorded at page 81 of volume 1 of Carolina, First Section, Registry of the Property of Carolina, Puerto Rico.

Registered owners: Héctor Pinilla Duarte and his wife Ana Lucia Quintero-Herrera.

**FACTS AND CIRCUMSTANCES**

5.     FBI and Drug Enforcement Administration Special Agents (SAs) and Task Force Officers (TFOs) have conducted a joint investigation of a group of individuals involved in a criminal enterprise to conduct schemes involving drug trafficking, wire fraud, mail fraud, aggravated identity theft and related crimes. SAs and TFOs have utilized various investigative techniques during the course of this investigation. Through their investigation, SAs and TFOs have positively identified MILTON PINILLA, aka "Michael Alicea", aka "Parce", aka "The Colombian" as a member of the criminal organization, a fact which will be detailed in this Affidavit, and have confirmed his residence, the property to be forfeited, to be located at 40 Calle Mar Mediteraneo, Carolina, Puerto Rico 00979. As further detailed in this Affidavit, through their investigation, SAs and TFOs have determined PINILLA purchased the residence directly from the

2

prior owner for $150,000 which are believed to be proceeds derived from the aforementioned crimes.

6.      Affiant has reviewed Court Ordered Title III Wiretap calls relating to PINILLA's criminal actions regarding this investigation. During these calls, subjects referred to PINILLA and agreed to meet with him to provide him with stolen identification information which PINILLA later used to conduct various fraudulent activities, including obtaining high-end telephones and establishing telephone accounts under fake names, then not making payment for the phones. These phones were later trafficked in bulk from Puerto Rico to the Contiguous United States and internationally, for sale at much higher prices. During the period of the investigation, Affiant has confirmed that members of the criminal enterprise conducted activities relating to wire fraud, access device fraud and related money laundering activities in excess of $3,000,000.00 USD.

7.      Based on the Title III wiretap calls and circumstances observed during surveillance as well as witness interviews conducted during the course of this investigation, Affiant knows PINILLA was involved in Aggravated Identity theft and related criminal activity and was an active member of the conspiracy. Further, he was sending stolen identifying information to members of the conspiracy which was later used to commit fraud in support of the Conspiracy.

8.      PINILLA was originally identified by Agents as "Michael Alicea." This identification was based upon surveillance, intercepted wiretap calls and the Puerto Rico Driver's License bearing PINILLA's photograph with Michael Alicea's personal identifying information. During the course of this investigation, facts have come to light which have led to PINILLA's true identity, as follows:

9.      On or about March 7, 2017, Agents conducted a review of photographs, identifying information and arrest records for Milton PINILLA, aka Melton PIPILLA, aka Milton Quintero-

PINILLA. After conducting the review and a side-by-side comparison of photographs of PINILLA and the individual known by this investigation as Michael ALICEA, Agents determined they were in fact the same person. PINILLA's arrest records show multiple State of Texas arrests for various charges including: Theft, Burglary of a Habitation, Evading Arrest, Discharge of a Firearm and Fraud/Possession of Identifying Information. These arrests occurred from 1997-2003. The records also reflect PINILLA had an active arrest warrant issued by US Customs and Border Patrol for Immigration Violations based on a US Marshals Service (USMS) arrest which occurred in Texas in 2004. The USMS arrest record shows PINILLA's place of birth as Bogota, Colombia.

10.     During the course of this investigation, Agents have conducted multiple interviews with a Cooperating Subject (hereafter referred to as "CS") who was an integral part of the criminal organization and who has firsthand knowledge of the individuals involved in the criminal organization and their criminal activities. CS is cooperating with law enforcement in consideration for pending federal charges and has provided reliable information relating to this investigation which has been independently corroborated by SAs and TFOs on multiple occasions.

11.     CS provided the following information concerning the Aggravated Identity Theft, Access Device Fraud and related crimes: CS and others engaged in various fraudulent activity since approximately 2013 using stolen identity information. Individuals involved in the conspiracy actively sought out personal identifying information of victims, used that information to manufacture fake identification cards, obtained cellular telephones and credit cards using the fake identification cards and stolen identification documents and used these credit cards to purchase items of value, all in furtherance of the conspiracy. CS stated he/she and others involved in the conspiracy financially profited from the criminal activities he/she described.

12.     During these interviews, CS identified a Colombian male CS knew as aka "Michael Alicea", aka "Parce" aka "Colombian" (and later identified as Milton PINILLA) was involved in using stolen identity information obtained by members of the organization, using the stolen identification information to obtain fake identification cards manufactured by individuals involved in the conspiracy and using or directing others to use the stolen identification information and fake identification cards to obtain cellular telephones from retail outlets by fraud. Parce and other members of the conspiracy sold these phones for a cash profit of 600 percent (phones obtained by theft and sold for $600.00 or more) or greater to benefit themselves and the conspiracy. During one such interview, CS was shown the Puerto Rico Department of Motor Vehicles DAVID (Driver's License) photo belonging to aka "Michael Alicea" (PINILLA). Upon observing the photo, CS positively identified the individual as the person he knew as aka "Michael Alicea," aka "Parce", aka "Colombian."

13.     CS stated PINILLA lived near the area of Isla Verde, Puerto Rico, in the neighborhood behind the España bakery. PINILLA was in the process of improving his residence and had installed a large gray door with a large pain of glass in the middle. He drove a white 500-series Mercedes Benz car at the time he was dealing with CS. CS and PINILLA often met at the residence or at the nearby España bakery to conduct or conspire about conducting criminal activity.

14.     CS stated PINILLA had his own contact or contacts who were employed by AT&T. This contact(s) provided PINILLA with stolen AT&T customer personal identification information and AT&T account information. Once PINILLA obtained the identity and account information, he provided this information to CS and others who directed co-conspirators to manufacture a fake identification card bearing the stolen identity information and a photo of a known co-conspirator (referred to by members of the conspiracy as a "Jockey"). PINILLA, CS

5

and others then directed Jockeys to present the fake identification cards at various phone retailers where they used the information to add additional phone lines to the existing victims' account. By doing this, they would fraudulently obtain high-end cellular telephones which were later resold by members of the conspiracy. According to CS, PINILLA received the phones which he later resold and/or received a portion of the profit from the sale of the phones.

15.     According to CS, PINILLA and other leaders in the conspiracy paid the Jockeys $100 per phone they obtained or errand they ran to conduct various fraudulent activities. CS estimates, at the height of the illegal activities being committed by members of the conspiracy, the organization was netting approximately $300,000.00 USD per month. PINILLA shared in these profits, according to CS.

16.     PINILLA, CS and others involved in the conspiracy frequently placed orders for phones using the detailed schemes and had the phones sent to victims' homes unbeknownst to those individuals. In order to avoid detection, they waited for the delivery truck (US Postal Service or other carrier) to arrive. They would then flag down the driver, give him the name on the package and act like they lived at the residence. In case the postal carrier asked for identification, they possessed the fake identification card used to obtain the phones and presented that identification card to the driver. CS participated in the part of the scheme and stated PINILLA taught him/her how to conduct this type of fraudulent activity. PINILLA used this method as his preferred way to pick-up cell phones he (or others) obtained by fraud. According to CS, PINILLA attempted to keep this part of the scheme separate from the overall conspiracy in order to keep the profits to himself from the resale of the fraudulently obtained phones.

17.     On March 9, 2017, Agents established surveillance of PINILLA's residence. During the surveillance, Agents observed a white (Hispanic) male walk out of the residence and

went to a local restaurant. During the surveillance, Agents took photographs of PINILLA. Based on this photographs and the personal observations of surveillance Agents, the male was positively identified as PINILLA.

18.     On March 8, 2017, a Federal Grand Jury seated in the District of Puerto Rico returned a True Bill indictment charging PINILLA and others violations of Title 18 § U.S.C 1341 – Mail Fraud, Title 18 § U.S.C 1343 – Wire Fraud, Title 18 § U.S.C 1028(A) – Aggravated Identity Theft, Title 18 § U.S.C 1029 – Access Device Fraud, Title 18 § U.S.C. 1956 – Money Laundering.

19.     On March 10, 2017, United States Magistrate Judge Bruce McGiverin, seated in the District of Puerto Rico issued a search warrant for PINILLA's residence, 40 Calle Mar Mediteraneo, Carolina, Puerto Rico. On March 14, 2017, FBI SAs and TFOs served this search warrant and arrested PINILLA for his indictment arrest warrant. During the search of the residence, SAs and TFOs discovered and seized multiple documents and cellular telephones and other electronic devices containing evidence of PINILLA's various fraudulent schemes as well as evidence and receipts showing the purchase of the property located at 40 Calle Mar Mediteraneo, Carolina, Puerto Rico. This information showed the residence was purchased from Fernando Velez Pico, the previous owner of the property and was purchased under the name of PINILLA's father, Hector Pinilla-Duarte for the amount of $150,000. The completion of the sale occurred on February 11, 2016.

20.     Affiant and other FBI SAs conducted multiple interviews with Velez-Pico, the seller of the property. During these interviews, Velez-Pico provided the following information: Velez-Pico first met PINILLA when he rented an apartment to PINILLA. Velez-Pico identified the known photo of PINILLA and stated he knew him as "Michael Alicea." After Velez-Pico's mother died, he offered to sell his mother's house to PINILLA who agreed to pay $150,000 to

Velez-Pico for the residence. This residence is located at Urb. Villa Mar, 40 Calle Mar Mediterraneo, Carolina, Puerto Rico (the property to be forfeited). PINILLA agreed to purchase this house directly from Velez-Pico and advised he planned to pay cash for the residence. PINILLA made most of the payments to Velez-Pico for the purchase of the residence. All the payments PINILLA made to Velez-Pico were in cash. PINILLA paid Velez-Pico in increments of $20,000 to $25,000 but did not always ask for receipts for payments. However, Velez-Pico insisted on writing receipts when he had received $50,000 and then another when he received $100,000. Finally, he wrote another receipt when he was paid the full amount of $150,000. Interviewing Agents showed Velez-Pico a copy of three handwritten receipts made out to "Michael Alicea" (PINILLA) and signed by Velez-Pico (the originals were seized during the search of 40 Mar Mediterraneo, Carolina, Puerto Rico). The receipts are for the amounts and are dated, as follows: 1/27/16 - $50,000; 2/1/16 - $100,000; and 2/6/16 - $50,000. The receipt dated 2/6/16 has the note "Saldo casa Villamar #40". Velez-Pico advised he recognized the receipts and stated he issued them to PINILLA under the (fraudulent assumed) name "Michael Alicea" (as noted on the receipts) for the sale of the residence. He further looked at the signature and handwriting on the receipts and confirmed they were his signature and handwriting. He located bank statements for his personal banking account at FirstBank of Puerto Rico which show the deposits he made into the account from selling the house at 40 Calle Mar Mediterraneo to Milton Pinilla, aka Michael Alicea. Velez-Pico showed interviewing Agents the statements and explained the bulk of the payments for the house were made in cash. He further explained PINILLA's sister, Maria Pilar Pinilla, made one payment of three bank checks in the amounts of $9,000, $9,000 and $6,000. Further, he explained Maria Pilar Pinilla lives in Texas and only visited Puerto Rico. He also pointed out the one check for $10,000 with the name Hector Pinilla on it and explained this is

8

PINILLA's father. Through this investigation, Affiant knows Hector Pinilla is the father of Milton PINILLA and is 84 year old retired accountant and a resident of San Antonio, Texas. PINILLA never told Velez-Pico what he did for a living or how he came about the money he used to pay for the house. When they signed the papers to turn over ownership of the residence to PINILLA, his parents were present to sign the papers and the deed for the residence was put into their names. They conducted the signing at Velez-Pico's residence. Although PINILLA's parents put the residence in their names, they never lived at the residence. Instead, PINILLA was the only person living in the residence for a period of time. Later, PINILLA's girlfriend (known through this investigation to be Alexandria Garcia) moved into the house to live with him.

## **CONCLUSION**

21.     Based on these facts and circumstances stated herein, CS testimony confirming PINILLA's participation in cash based fraudulent practices, review of Title III Wiretap evidence, and witness interviews, Affiant and the FBI, San Juan Division believe there is probable cause to forfeit the property located at 40 Calle Mar Mediteraneo, Carolina, Puerto Rico as proceeds of the following Specified Unlawful Activities: Title 18 § U.S.C 1341 – Mail Fraud, Title 18 § U.S.C 1343 – Wire Fraud, Title 18 § U.S.C 1028(A) – Aggravated Identity Theft, Title 18 § U.S.C 1029 – Access Device Fraud, Title 18 §§ U.S.C. 1956 and 1957 – Money Laundering.

I declare under penalty of perjury that the above is true and correct to the best of my knowledge and belief, pursuant Title 28, United States Code, Section 1746.

In San Juan, Puerto Rico, this _11th_ day of _July_ 2018.

_____
Matthew K. Ferguson
Special Agent
Federal Bureau of Investigation

9

®JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Maritza González-Rivera, AUSA, 350 Carlos Chardón Ave, Suite 1201, Hato Rey, PR  00918

## DEFENDANTS

Property No. 100 (before 3297), recorded at page 81 of volume 1 of Carolina, First Section, Registry of the Property of Carolina, Puerto Rico, located at 40 Calle Mar Mediteraneo, Lot Number 28 from Block "C" in Villamar, Development at Cangrejo Arriba Ward, Carolina, Puerto Rico,

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☒ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)         and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☒ 690 Other | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | | ☐ 710 Fair Labor Standards Act | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | | ☐ 740 Railway Labor Act | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | ☐ 790 Other Labor Litigation | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **SOCIAL SECURITY** | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 861 HIA (1395ff) | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | ☐ 862 Black Lung (923) | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | ☐ 863 DIWC/DIWW (405(g)) | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | ☐ 864 SSID Title XVI | ☐ 950 Constitutionality of State Statutes |
| | | | | ☐ 865 RSI (405(g)) | |
| | | | | **FEDERAL TAX SUITS** | |
| | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| | | | | ☐ 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN   (Place an "X" in One Box Only)

☒ 1  Original Proceeding

☐ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  Transferred from another district (specify)

☐ 6  Multidistrict Litigation

☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Title 18, USC, Setions 1341, 1343, 1028(A), 1029, 1956 and 1957.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions:)

JUDGE

DOCKET NUMBER

DATE
07-09-2018

SIGNATURE OF ATTORNEY OF RECORD
S/Maritza González-Rivera

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

 **United States District Court** *for the* **District of Puerto Rico**

## CATEGORY SHEET

1. Title of Case (Name of first party on each side only)
   US v.  Property No. 100 (before 3297), recorded at page 81 of volume 1 of Carolina, First Section, Registry of the Property of Carolina, Puerto Rico, located at 40 Calle Mar Mediteraneo, Lot Number 28 from Block "C" in Villamar, Development at Cangrejo Arriba Ward, Carolina, Puerto Rico,

2. Category in which case belongs: (See Local Rules)

   | | |
   |---|---|
   | __X__ ORDINARY CIVIL CASE | CIVIL FORFEITURE |
   | _____ SOCIAL SECURITY | |
   | _____ BANK CASE | |
   | _____ INJUNCTION | |

3. Title and number, if any, of related cases (See Local Rules)

   _____

   _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this Court?
   ☐ YES   ☒ NO

5. Is this case required to be heard and determined by a District Court of three judges pursuant to Rule 28 U.S.C. 2284?
   ☐ YES   ☒ NO

6. Does this case question the constitutionality of a state statute (FRCP 24)?

   ☐ YES   ☒ NO

(Please Print)

USDC ATTORNEY'S ID NO.   | 208801 |

ATTORNEY'S NAME:   | MARITZA GONZALEZ RIVERA |

MAILING ADDRESS:   | TORRE CHARDON, SUITE 1201, 350 CARLOS CHARDON AVE |

| HATO REY  PR | ZIP CODE | 00918 |

TELEPHONE NO.   | 787-766-5656 |